# UNITED STATES *v.* CHASE NATIONAL BANK.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.**

No. 134. Argued January 14, 15, 1920.—Decided April 19, 1920.

A drawee who pays a draft drawn to the drawer's order, upon which the drawer's signature, as well as his endorsement, is forged, cannot recover the money from a *bona fide* holder for value, guilty of no bad faith or negligence contributing to the success of the forgery. P. 493.

In order to recover money as paid under mistake of fact, the plaintiff must show that the defendant cannot in good conscience retain it. *Id.*

250 Fed. Rep. 105, affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Spellacy,* with whom *Mr. Leonard B. Zeisler* and *Mr. Charles H. Weston* were on the briefs, for the United States:

The plaintiff may recover, since the defendant did not change its position to its prejudice in reliance on the fact of payment and since its indorser was guilty of acts of negligence contributing to the success of the forgery. The law recognizes no such thing as a holder in due course of a negotiable instrument void in its inception because of the forgery of the drawer's signature. If plaintiff is permitted to assert as against the Howard National Bank that the drawer's signature was forged, it may also do so against the defendant. As between plaintiff and the Howard National Bank this case is not within the rule that one who has paid a check drawn upon him cannot deny the genuineness of the drawer's signature, but within the exceptions to it.

The Howard National Bank must have known that for almost two months prior to the presentation of this check Sumner had not been acting as quartermaster. This circumstance alone should have aroused its suspicion as to the authority of Howard to cash the check. It is true that Howard's endorsement on the check was not necessary for negotiation; but the universal custom of bankers, of which this court will take judicial notice, requires a person receiving payment of a check or draft to endorse his name on it as a form of receipt and as a means of identification. Morse, Banks and Banking, 5th ed., § 391. This is especially true where the check is. being cashed by a bank on whom it is not drawn.

The check when presented to the Treasurer showed no endorsements intervening between that of Sumner and the bank, and the Treasurer was justified in believing that the money had been paid to Sumner in person. The bank's guaranty of Sumner's endorsement amounted to a representation that it knew it to be genuine. Since his signatures as drawer and endorser were indistinguishable, such a guaranty could not but allay any suspicion plaintiff might have as to the genuineness of his signature as drawer. It certainly amounted to a statement that the bank did not intend to call on the Treasurer to verify the signature. Had plaintiff been doubtful of the signature it might well rely upon that guaranty as evidence that the drawer's signature was genuine. Further, had Howard's endorsement appeared on the check, the plaintiff would have had notice that the money had not been paid to Sumner directly and the case might have called upon it to scrutinize the drawer's signature with more care. This is sufficient to defeat defendant's claim. *Danvers Bank* v. *Salem Bank*, 151 Massachusetts, 280, 283; *Ford & Co.* v. *Bank*, 74 S. Car. 180; *People's Bank* v. *Franklin Bank*, 88 Tennessee, 299; *Greenwald* v. *Ford*, 21 S. Dak. 28; *McCall* v. *Corning*, 3 La. Ann. 409; *Farmers' National Bank* v.

*Farmers' & Traders' Bank*, 159 Kentucky, 141; *Canadian Bank of Commerce v. Bingham*, 30 Washington, 484; *National Bank v. Bangs*, 106 Massachusetts, 441; *Williamsburgh Trust Co. v. Tum Suden*, 120 App. Div. 518; *Ronvant v. San Antonio National Bank*, 63 Texas, 610.

The general rule that money paid under a mistake of fact may be recovered, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund, has been modified in the class of cases under consideration only to the extent that where the mistake is that of a drawee in failing to discover the forgery of his drawer's signature, he cannot recover where the person receiving the money has been free from negligence, or affirmative action, contributing to the success of the deception. The drawee is bound to know the signature of one who draws upon him, and his failure to detect a forgery is negligence as a matter of law. The rule applies only where the holder is himself entirely free from fault and slight circumstances have been laid hold of to show negligence on his part so as to take the case out of the operation of the exceptional rule. See cases cited *supra*, and *Ellis v. Trust Company*, 4 Oh. St. 628; *First National Bank v. State Bank*, 22 Nebraska, 769; *Woods v. Colony Bank*, 114 Georgia, 683; *Newberry Bank v. Bank of Columbia*, 91 S. Car. 294.

The doctrine that a check payable to a fictitious person is payable to bearer is inapplicable. The plaintiff is not barred from recovery in this case by negligence in failing sooner to discover and notify the bank of the forgery. Even if it was negligent in this respect, that would not avail the defendant, for the latter was itself negligent in cashing the draft under suspicious circumstances without inquiring into the right to receive the

money. *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, distinguished.

All the authorities which lay down the rule that it is the duty of a depositor to exercise reasonable diligence to discover forgeries of his checks and that if the bank suffers a loss because of his negligence in failing to promptly discover and notify the bank of forgeries, the depositor cannot recover money paid out, recognize that where the bank has itself been guilty of negligence in paying a forged check it cannot receive a credit for the amount. *New York Produce Exchange Bank* v. *Housion,* 169 Fed. Rep. 785, 788; *Merchants National Bank* v. *Nichols & Co.,* 223 Illinois, 41, 52; *National Dredging Co.* v. *Farmers Bank,* 6 Penn. (Del.), 580, 590; *Brixen* v. *National Bank,* 5 Utah, 504; *United States* v. *National Bank of Commerce,* 205 Fed. Rep. 433, 436; *Danvers Bank* v. *Salem Bank,* 151 Massachusetts, 280.

*Mr. Henry Root Stern* for defendant in error:

The drawee of a check or draft is bound, at his peril, to know the drawer's signature and cannot, after payment to an innocent holder for value, recover back the amount from the latter. *Price* v. *Neal,* 3 Burr. 1354; *United States Bank* v. *Bank of Georgia,* 10 Wheat. 333; *United States* v. *Bank of New York,* 219 Fed. Rep. 648; *National Park Bank* v. *Ninth National Bank,* 46 N. Y. 77; *Bank of St. Albans* v. *Farmers' & Mechanics' Bank,* 10 Vermont, 141; *First National Bank of Belmont* v. *First National Bank of Barnesville,* 58 Ohio St. 207; *State National Bank* v. *Bank of Magdalena,* 21 N. Mex. 653; *Bergstrom* v. *Ritz-Carlton Restaurant & Hotel Co.,* 171 App. Div. 776; *Germania Bank* v. *Boutell,* 60 Minnesota, 189; Ames, 4 Harvard Law Review, 275.

This is equally true, even though the endorsement of the purported payee also is forged. *Postal Telegraph-Cable Co.* v. *Citizens' National Bank,* 228 Fed. Rep. 601;

*State Bank* v. *Cumberland Savings Bank*, 168 N. Car. 605; *Deposit Bank of Georgetown* v. *Fayette National Bank*, 90 Kentucky, 10; *First National Bank* v. *Marshalltown State Bank*, 107 Iowa, 327; *Howard & Preston* v. *Mississippi Valley Bank of Vicksburg*, 28 La. Ann. 727; *Bank of England* v. *Vagliano Bros.*, L. R. (1891) A. C. 107; *National Park Bank* v. *Ninth National Bank*, 46 N. Y. 77; *National Bank of Commerce* v. *United States*, 224 Fed. Rep. 679; *s. c.*, 205 Fed. Rep. 433; 2 Parsons on Notes and Bills, 591; *Robinson* v. *Yarrow*, 7 Taunt. 455; *Cooper* v. *Meyer*, 10 B. & C. 468; *Beeman* v. *Duck*, 11 M. & W. 251; *Williams* v. *Drexel*, 14 Maryland, 566.

Inasmuch as the individual drawing this instrument did not intend that the person named as payee therein should have any interest in it or even possession, such payee was, within the negotiable instruments law, a "fictitious" payee, and hence the instrument was payable to bearer, and the endorsement surplusage.

The record fails to disclose any facts sufficient to justify a finding that the Howard National Bank was negligent. *Dedham National Bank* v. *Everett National Bank*, 177 Massachusetts, 392.

Both parties having moved for the direction of a verdict, the exception to the finding of the trial judge in favor of the defendant does not permit the plaintiff to raise the question of the negligence of the Howard National Bank for review by this court upon writ of error.

Even assuming that the Howard National Bank was negligent in cashing the check, such negligence could not be charged to the defendant bank, which was a *bona fide* purchaser for value. *Merchants National Bank* v. *Santa Maria Sugar Co.*, 162 App. Div. 248; *National Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *Rickerson Roller-Mill Co.* v. *Farrell Foundry & Machine Co.*, 75 Fed. Rep. 554; *National Park Bank* v. *Ninth National Bank*, 46 N. Y. 77; *Jones* v. *Miners, etc., Bank*, 144 Mo. App. 428;

*Pennington County Bank* v. *Moorehead First State Bank*, 110 Minnesota, 263; *Raphael* v. *Bank of England*, 17 C. B. 161; *United States* v. *Bank of New York*, 219 Fed. Rep. 648.

The stipulated facts establish such negligence on the part of the plaintiff as will, irrespective of any other question in the case, preclude its right to recovery. The general verdict directed in favor of the defendant necessarily constituted a finding of such negligence which this court will not disturb upon writ of error. *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96, 115; *Marks* v. *Anchor Savings Bank*, 252 Pa. St. 304, 310; *Gloucester Bank* v. *Salem Bank*, 17 Massachusetts, 32; *United States* v. *Central National Bank*, 6 Fed. Rep. 134; *Salas* v. *United States*, 234 Fed. Rep. 842; *United States* v. *Bank of New York*, 219 Fed. Rep. 648, 649.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Plaintiff in error sued the defendant bank, at law, to recover money paid out under mistake of fact. The complaint alleged:

"First. That at all the times hereinafter mentioned, the plaintiff was and is a corporation sovereign, and the defendant was and is an association organized for and transacting the business of banking in the city, State, and Southern District of New York, under and pursuant to the provisions of the acts of Congress in such case made and provided;

"Second. That on or about the 18th day of December, 1914, the defendant presented to the Treasurer of the United States at Washington, D. C., for payment, a draft in the sum of $3,571.47, drawn on the Treasurer of the United States, payable to the order of E. V. Sumner, 2d Lt., 2d Cav., A. Q. M., and purporting to be drawn by E. V. Sumner, Acting Quartermaster, U. S. A., and to be endorsed by E. V. Sumner, 2d Lt., 2d Cav., A. Q. M., the

Howard National Bank, and the defendant; a copy of said draft and the indorsements on the back thereof is hereto attached and marked Exhibit A,[1] and made a part hereof;

---

[1] (Ex. A.) [Face.]

OFFICE OF THE QUARTERMASTER.

Fort Ethan Allen, Vermont.

War                                    December
Quartermaster                          15, 1914.
Thesaur Amer                                        444
  (Shield)        Treasurer of the United States    15-51
Septent Sigil.

Pay to the order of E. V. Sumner, 2d Lt., 2d Cav., A. Q. M.... $3571.47

Thirty-five hundred seventy-one & 47/100 dollars.

Object for which drawn: Vo. No. Cash transfers.

E. V. Sumner,
*Acting Quartermaster, U. S. A. 21739.*

[Back.]

Form Approved by the
Comptroller of the
    Treasury
January 27, 1913.

This check must be indorsed on the line below by the person in whose favor it is drawn, and the name must be spelled exactly the same as it is on the face of the check.

If indorsement is made by mark (X) it must be witnessed by two persons who can write, giving their place of residence in full.

E. V. Sumner,
(Sign on this line)
*2d Lt., 2d Cav., AQM.*

Pay Chase National Bank
New York, or Order,
Restrictive endorsements guaranteed.
Howard Nat'l Bank,
58–3 Burlington, Vt. 58–3,
M. T. Rutter, Cashier.

Received payment from
The Treasurer of the United States
Dec. 16, 1914.
1–74 The Chase National Bank 1–74
Of the City of New York.

"Third. That at the date of the presentation of said draft by the defendant to the Treasurer of the United States, the defendant was a depository of the funds of the United States of America, and payment of said draft to the defendant was thereupon made by the plaintiff, by passing a credit for the amount of said draft to the defendant upon the accounts of the defendant, as depository for the funds of the plaintiff;

"Fourth. That the name of said E. V. Sumner, 2d Lt., 2d Cav., A. Q. M., endorsed upon the back of said draft, was forged and had been wrongfully and fraudulently written upon the same by a person other than the said E. V. Sumner, without his knowledge or consent, and no part of the proceeds of said draft were ever received by him;

"Fifth. That the payment of said draft made by the plaintiff to the defendant, as described in paragraph three of this complaint, was made under a mistake of fact and without knowledge that the signature of the said E. V. Sumner, 2d Lt., 2d Cav., A. Q. M., payee thereof, had been forged upon the back of said draft;

"Sixth. That the plaintiff has duly requested the defendant to repay to it the amount of said draft, to wit, $3,571.47, but the defendant has failed and refused to pay the same or any part thereof to the plaintiff.

"Wherefore, the plaintiff demands judgment against the defendant in the sum of $3,571.47, with interest thereon from the 18th day of December, 1914, together with the costs and disbursements of this action."

The bank denied liability and among other things claimed that the same person wrote the name E. V. Sumner upon the draft both as drawer and indorser. The facts were stipulated.

It appears: Lieutenant Sumner, Quartermaster and Disbursing Officer at Fort Ethan Allen, near Burlington, Vermont, had authority to draw on the United States Treasurer. Sergeant Howard was his finance clerk and so

known at the Howard National Bank of Burlington. Utilizing the official blank form, Howard manufactured *in toto* the draft in question—Exhibit A.  Having forged Lieutenant Sumner's name both as drawer and indorser he cashed the instrument over the counter at the Howard National Bank without adding his own name.  That bank immediately indorsed and forwarded it for collection and credit to the defendant at New York City; the latter promptly presented it to the drawee (The Treasurer), received payment and credited the proceeds as directed. Two weeks thereafter the Treasurer discovered the forgery and at once demanded repayment which was refused.  Before discovery of the forgery the Howard National Bank withdrew from the Chase National Bank sums aggregating more than its total balance immediately after such proceeds were credited; but additional subsequent credit items had maintained its balance continuously above the amount of the draft.

Both sides asked for an instructed verdict without more. The trial court directed one for the defendant (241 Fed. Rep. 535) and judgment thereon was affirmed by the Circuit Court of Appeals. 250 Fed. Rep. 105.  If important, the record discloses substantial evidence to support the finding necessarily involved that no actual negligence or bad faith, attributable to defendant, contributed to success of the forgery. *Williams* v. *Vreeland,* 250 U. S. 295, 298.

The complaint placed the demand for recovery solely upon the forged indorsement—neither negligence nor bad faith is set up.  If the draft had been a valid instrument with a good title thereto in some other than the collecting bank, nothing else appearing, the drawee might recover as for money paid under mistake. *Hortsman* v. *Henshaw,* 11 How. 177, 183.  But here the whole instrument was forged, never valid, and nobody had better right to it than the collecting bank.

· *Price* v. *Neal* (1762), 3 Burrow's, 1354, 1357, held that it is incumbent on the drawee to know the drawer's hand and that if the former pay a draft upon the latter's forged name to an innocent holder not chargeable with fault there can be no recovery. "The plaintiff can not recover the money, unless it be against conscience in the defendant to retain it." "But it can never be thought unconscientious in the defendant, to retain this money, when he has once received it upon a bill of exchange indorsed to him for a fair and valuable consideration, which he had *bona fide* paid, without the least privity or suspicion of any forgery." And the doctrine so announced has been approved and adopted by this court. *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333, 348. *Hoffman & Co.* v. *Bank of Milwaukee*, 12 Wall. 181, 192. *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96, 109. *United States* v. *National Exchange Bank*, 214 U. S. 302, 311.

In *Bank of United States* v. *Bank of Georgia*, through Mr. Justice Story, this court said concerning *Price* v. *Neal:*

"There were two bills of exchange, which had been paid by the drawee, the drawer's handwriting being a forgery; one of these bills had been paid, when it became due, without acceptance; the other was duly accepted, and paid at maturity. Upon discovery of the fraud, the drawee brought an action against the holder, to recover back the money so paid, both parties being admitted to be equally innocent. Lord Mansfield, after adverting to the nature of the action, which was for money had and received, in which no recovery could be had, unless it be against conscience for the defendant to retain it, and that it could not be affirmed, that it was unconscientious for the defendant to retain it, he having paid a fair and valuable consideration for the bills, said, 'Here was no fraud, no wrong; it was incumbent upon the plaintiff to be satisfied, that the bill drawn upon him was the drawer's hand, before he accepted or paid it; but [it] was not incumbent upon the defendant

to inquire into it.   There was a notice given by the defend-
ant to the plaintiff, of a bill drawn upon him, and he sends
his servant to pay it, and take it up; the other bill he
actually accepts, after which, the defendant, innocently
and *bona fide,* discounts it; the plaintiff lies by for a con-
siderable time after he has paid these bills, and then found
out that they were forged.   He made no objection to them,
at the time of paying them; whatever neglect there was,
was on his side.   The defendant had actual encouragement
from the plaintiff for negotiating the second bill, from the
plaintiff's having, without any scruple or hesitation, paid
the first; and he paid the whole value *bona fide.*   It is a mis-
fortune which has happened without the defendant's
fault or neglect.   If there was no neglect in the plaintiff,
yet there is no reason to throw off the loss from one inno-
cent man, upon another innocent man.   But, in this case,
if there was any fault or negligence in any one, it certainly
was in the plaintiff, and not in the defendant.'   The whole
reasoning of this case applies with full force to that now
before the court.   In regard to the first bill, there was no
new credit given by any acceptance, and the holder was in
possession of it, before the time it was paid or acknowl-
edged.   So that there is no pretence to allege, that there
is any legal distinction between the case of a holder before
or after the acceptance.   Both were treated in this judg-
ment as being in the same predicament, and entitled to
the same equities.   The case of *Price* v. *Neal* has never
since been departed from; and in all the subsequent
decisions in which it has been cited, it has had the uniform
support of the court, and has been deemed a satisfactory
authority."

Does the mere fact that the name of Lieutenant Sum-
ner was forged as indorser as well as drawer prevent appli-
cation here of the established rule?   We think not.   In
order to recover plaintiff must show that the defendant
cannot retain the money with good conscience.   Both are

innocent of intentional fault. The drawee failed to detect
the forged signature of the drawer. The forged indorse-
ment puts him in no worse position than he would occupy
if that were genuine. He cannot be called upon to pay
again and the collecting bank has not received the proceeds
of an instrument to which another held a better title. The
equities of the drawee who has paid are not superior to
those of the innocent collecting bank who had full right to
act upon the assumption that the former knew the draw-
er's signature or at least took the risk of a mistake con-
cerning it. *Bank of England* v. *Vagliano Bros.*, L. R. App.
Cas. [1891] 107; *Dedham Bank* v. *Everett Bank*, 177
Massachusetts, 392, 395; *Deposit Bank* v. *Fayette Bank*, 90
Kentucky, 10; *National Park Bank* v. *Ninth National Bank*,
46 N. Y. 77, 80; *Howard* v. *Mississippi Valley Bank*, 28 La.
Ann. 727; *First National Bank* v. *Marshalltown State Bank*,
107 Iowa, 327; *State Bank* v. *Cumberland Savings & Trust
Co.*, 168 N. Car. 606; 4 Harvard Law Review, 297, Article
by Prof. Ames. And see, *Cooke* v. *United States*, 91 U. S.
389, 396.

The judgment of the court below is

*Affirmed.*

MR. JUSTICE CLARKE dissents.