UNITED STATES v. NATIONAL ROCK-LAND BANK.

No. 373.

District Court, D. Massachusetts.

Dec. 6, 1940.

Edmund J. Brandon, U. S. Atty., and Edward O. Gourdin, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

James W. Flood, of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit brought by the United States of America seeking to recover the sum of $200, with interest, from the defendant bank. A jury trial claimed by the defendant was waived.

### Findings of Fact.

The stipulated facts are as follows:

One Alphonza C. Douglas of 3 Bartlett Street, Everett, Massachusetts, was a United States veteran of the Spanish American War and of the World War and, as such veteran, was entitled to compensation from the United States of America during his life, at the rate of $100 per month.

On or about July 1, 1927, the plaintiff learned of the death of the said Alphonza C. Douglas on or about June 27, 1927, and, on August 27, 1927, it had received and filed in its records concerning the veteran a duly authenticated copy of his death certificate.

Sometime in July, 1927, the plaintiff drew a draft upon itself, numbered 162701 and dated July 31, 1927, in the amount of $100 and payable to the said Alphonza C. Douglas as veteran's compensation due for the month of July, 1927.

Sometime in August, 1927, the plaintiff drew a draft upon itself, numbered 174042 and dated August 31, 1927, in the amount of $100 and payable to the said Alphonza C. Douglas as veteran's compensation due for the month of August, 1927.

The drafts above referred to were endorsed as follows: Alphonza C. Douglas, Minerva F. Thompson, Jesse Goode, The National Rockland Bank of Boston, Federal Reserve Bank of Boston, and were paid by the plaintiff on August 5, 1927, and September 7, 1927, respectively.

After August 31, 1927, the plaintiff issued no further drafts payable to Alphonza C. Douglas. .

All endorsements on the drafts above referred to were genuine and valid, with the exception of that of "Alphonza C. Douglas", which were forgeries.

On payment by the plaintiff on August 5, 1927, and September 7, 1927, respectively, the drafts referred to were delivered to the plaintiff through its treasury department, and on these dates the plaintiff knew or should have known of the forgeries of the signature of the payee. The plaintiff had actual knowledge of the forgeries of the signature of the payee, on the drafts in question, on or before February 23, 1928.

Upon acquisition by the defendant bank of the drafts in question from the endorser Jesse Goode, the defendant bank paid to him the full face value of these drafts, the defendant having acquired them in good faith and without any knowledge or notice of the death of the payee, Alphonza C. Douglas, or of the forgeries of his signature on the drafts.

The first knowledge or notice of the death of the payee, Alphonza C. Douglas, was received by the defendant bank on or about April 18, 1937, by letter from the Federal Reserve Bank of Boston dated April 17, 1937, and the first knowledge or notice that the signatures of the said payee on the drafts in question were forgeries was received by it on September 17, 1937, by letter from the Federal Reserve Bank of. Boston dated September 16, 1937.

On July 1, 1927, and continuously thereafter until January 1, 1935, the endorser Minerva Thompson was financially responsible and able to respond in damages or payment to the defendant bank for any judgment it might have secured or any claim it might have made against her because of the forgeries of the name of the payee, Alphonza C. Douglas, or because of her unrestricted endorsement upon the drafts, but she was unable so to respond in damages or payment from January 1, 1935, and continuously thereafter to the time of her death in October, 1937, and, further, she possessed no property, real or personal, at the time of her death.

On July 1, 1927, and continuously thereafter until January 1, 1937, the endorser Jesse Goode was financially responsible

and able to respond in damages or payment to the defendant bank for any judgment it might have secured or any claim it might have made against him because of the forgeries of the name of the payee, Alphonza C. Douglas, or because of his unrestricted endorsement upon the drafts, but he was unable so to respond in damages or payment from January 1, 1937, and continuously thereafter to the present time, and, further, he has been, since January 1, 1937, and is now without means and destitute.

It is the contention of the plaintiff that it is entitled to recover the amount of the drafts above referred to as money paid under a mistake of fact and is not, as the defendant contends, barred from recovery on the ground that it was guilty of laches.

### Conclusions of Law.

■ The court in the case of United States v. Guaranty Trust Company of New York, 293 U.S. 340, 350, 55 S.Ct. 221, 226, 79 L.Ed. 415, 95 A.L.R. 651, stated: "As against the United States, the rights of the holder of its checks drawn upon the Treasurer are the same as those accorded by commercial practice to the checks of private individuals."

■ The Supreme Court in the case of Cooke et al. v. United States, 91 U.S. 389, 398, 23 L.Ed. 237, 243, stated: "Laches is not imputable to the government, in its character as a sovereign, by those subject to its dominion. * * * Still a government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there. Thus, if it becomes the holder of a bill of exchange, it must use the same diligence to charge the drawers and indorsers that is required of individuals; and, if it fails in this, its claim upon the parties is lost."

■ Further, in connection with our problem here, the Circuit Court of Appeals for the Ninth Circuit in Ladd & Tilton Bank v. United States, 30 F.2d 334, 336, held that: "While the statute of limitations does not run against a right of action in favor of the government (United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194) * * *. Where the right of action is for the recovery of money paid upon a forged instrument, the United States is subject to the same rules applicable to litigants generally."

■ The court there approved the decision of Judge Lowell of this district in United States v. National Exchange Bank of Boston et al., C.C., 141 F. 209, 210, 211, (affirmed, United States v. National Exchange Bank of Providence, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184), in which he stated: "One who has paid money to another upon a check bearing a forged indorsement may ordinarily recover back the money paid, even though the other be an innocent holder of the check for value. * * * But recovery cannot be had, where it would be inequitable, and especially where the negligence of the plaintiff in making the payment, or his delay after discovering the forgery in notifying the defendant, has damaged the latter."

■ This language is applicable here. The delay of the government in not notifying the defendant for almost ten years after knowing of the forgeries, completely destroyed the defendant's opportunity to seek indemnity from the endorsers Thompson and Goode, because of their changed financial circumstances. With ability to respond in damages up to 1935 and 1937, respectively, they were both impecunious in 1937 when the plaintiff gave the defendant notice of the forgeries.

■ This being in the nature of an equitable action, the plaintiff must do equity before it can recover. The Supreme Court in referring to actions for money had and received in the case of Stone et al., Trustees v. White, 301 U.S. 532, 535, 57 S.Ct. 851, 853, 81 L.Ed. 1265, stated: "Since, in this type of action, the plaintiff must recover by virtue of a right measured by equitable standards, it follows that it is open to the defendant to show any state of facts which, according to those standards, would deny the right * * *".

Consequently, under the circumstances here, the plaintiff cannot recover. United States v. National Exchange Bank, C.C., 45 F. 163; United States v. Clinton National Bank, C.C., 28 F. 357; United States v. National City Bank of New York, D.C., 28 F.Supp. 144; Gloucester Bank v. Salem Bank, 17 Mass. 33, 45.

Judgment may be entered for the defendant, without costs.