NATIONAL METROPOLITAN BANK *v.* UNITED STATES.

No. 161.   Argued December 13, 14, 1944.—Decided January 8, 1945.

*Mr. George C. Gertman* for petitioner.

*Mr. David L. Kreeger, pro hac vice,* with whom *Solicitor General Fahy, Assistant Attorney General Shea,* and *Messrs. Paul A. Sweeney* and *W. Leavenworth Colby* were on the brief, for the United States.

MR. JUSTICE BLACK delivered the opinion of the Court.

One Foley, a civilian clerk in the Paymaster's office of the Marine Corps, procured the issuance of 144 govern-

ment checks, duly signed by the authorized disbursing officials, by forging pay and travel mileage vouchers in the names of living Marine Corps officers. These forgeries occurred during a period of twenty-eight months, beginning shortly before July 14, 1936, and ending November 16, 1938. The checks were drawn on the United States Treasury payable to the order of the officers and delivered to Foley for distribution to them. Foley forged their endorsements, added his own name as second endorser, and deposited or cashed the checks at the Anacostia Bank. That bank, without investigating the genuineness of the payees' signatures, endorsed the checks and transmitted them to the petitioner bank, which collected on them from the government. Both banks specifically guaranteed prior endorsements. About November 21, 1938, the government discovered the fraud and the forgeries, and on December 8th formally demanded repayment from the petitioner. Repayment was refused. On August 11, 1942, the government brought this suit in the District Court to recover the payments made. The complaint contained two counts, one for breach of express warranty, and one for money paid under a mistake of fact. The bank filed an answer in which it admitted that it had collected the moneys for the account of the Anacostia Bank after presenting the checks to the government with its stamped endorsement guaranteeing prior endorsements. As defense it set up the following: (1) the endorsement did not amount to a guaranty of the payee's signature; (2) issuance of the checks by the government was a warranty that they were not "fictitious," but genuine and issued for a valuable consideration, and this warranty was breached; (3) the government's disbursing agencies neglected properly to supervise and examine the transactions both before and after the first and succeeding checks were issued, thereby delaying discovery of the fraud, and this neglect, not the bank's guaranty,

caused the government's loss. The District Court granted the government's motion for judgment on the pleadings, and the Court of Appeals affirmed, 142 F. 2d 474, on the authority of its own prior decision in *Washington Loan & Trust Co.* v. *United States,* 134 F. 2d 59 (1943). Because of a conflict with *United States* v. *First National Bank,* 138 F. 2d 681, (C. C. A. 7, 1943), we granted certiorari.

Only recently, in *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, we had occasion to consider rights and liabilities of the government which stem from the issuance and circulation of its commercial paper. Our conclusion was that legal questions involved in controversies over such commercial papers are to be resolved by the application of federal rather than local law and that, in the absence of an applicable Act of Congress, federal courts must fashion the governing rules. Some of the questions petitioner argues here are foreclosed by the *Clearfield* decision. There we held that presentation of a government check to it for payment with an express guaranty of prior endorsements amounts to a warranty that the signature of the payee was not forged, but genuine. Breach of that warranty, we said, by presenting a check on which the payee's signature is a forgery, gives the government a right to recover from the guarantor when payment is made. The checks in the instant case were presented to the government by the bank bearing forged endorsements of the payee's name, and a specific guaranty by the bank. Under the *Clearfield* rule, therefore, the government should recover, unless other principles here invoked exempt it from liability.

It is contended that had it not been for negligence of the government's administrative officers in detecting the frauds of its clerk, some, if not all, of the checks would not have been issued, and that neither the government nor the bank would have suffered any loss. The answer

alleged facts which, if true, did show negligence in failing to discover the frauds, and since judgment was entered on the pleadings without trial, we must treat the case as though negligence in this respect had been established. This question as to the effect of the drawer-drawee's negligence prior to a specific guaranty of endorsements was not directly involved in our *Clearfield* case; it was an issue in *United States* v. *National Exchange Bank,* 214 U. S. 302, a case on which we largely drew for the principles announced in the *Clearfield* decision. In the latter case, we pointed out that the *National Exchange Bank* case stood for the rule that prompt discovery of fraud was not a condition precedent to suit in cases like this. The *National Exchange Bank* case presented a situation where 194 government checks had been issued over a period of ten years as a result of forged vouchers. There, as here, proper examination and supervision by government officials would have uncovered the frauds and thereby prevented or reduced the loss. The collecting bank defended there, as here, on the ground that the government's failure to discover the fraud should absolve the collecting bank from liability. This Court, applying the general law merchant, rejected the defense. The rule there applied, as pointed out by the court below in *Washington Loan & Trust Co.* v. *United States, supra,* has been almost unanimously accepted by state and federal courts. No persuasive reasons have been suggested to us why it should not be accepted as the general federal rule.

Rejection of the defense of the government's negligence here set up does not, as petitioner argues, conflict with this Court's holding in *United States* v. *Chase National Bank,* 252 U. S. 485. In that case the government brought suit against a bank to recover payment it made of a government draft which was itself a forgery. The name of the payee was also forged. Recovery was denied because the

instrument was a forgery. The holding rested on a long established exception to the general rule under which one who presents and collects a valid commercial instrument with a forged endorsement can be compelled to repay. The reason for the exception is that a drawee is required to be familiar with a drawer's signature; if therefore the drawee pays to an innocent presenter on a forged drawer's signature, it has been held that the drawee's right to the money is not superior to that of the innocent presenter. *Price* v. *Neal,* 3 Burr. 1354. This exception is not applicable here because the signatures of the drawer on these checks were genuine while those in the Chase National Bank controversy were forged. The fact that these checks were induced by fraud does not bring them within the reasoning of the Chase National Bank rule.

There is nothing here to support the petitioner's contention that the government's conduct in issuing the checks prompted it to guarantee the payee's endorsement. Such a guarantee no more results from the issuance of government checks than any other checks. Government regulations concerning payment of its commercial paper point the other way. Treasury Regulations have made guarantee of prior endorsements a prerequisite to payment. 31 C. F. R. 202.33. This guaranty was a protection which the government sought not only as to checks which were issued in due course for a valuable consideration, but as to checks which might have been irregularly issued. That the administrative officers failed fully to perform their duty is no reason why the government should be deprived of the advantage of a guarantee independently made by one who was not under compulsion of any kind to make it. No equitable principles require that one who, for his own reasons, guarantees a payee's signature after issuance of a check, shall be relieved of his voluntarily assumed obligation because others who owed the government obligations had previously defaulted in their obligations.

We do not say that there may not be some circumstances, not now before us, under which the government might be precluded from recovery because of conduct of a drawer prior to a guaranty of endorsement. We do hold that negligence of a drawer-drawee in failing to discover fraud prior to a guaranty of the genuineness of prior endorsements does not absolve the guarantor from liability in cases where the prior endorsements have been forged.

*Affirmed.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.